**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| DONALD E. WEAVER, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:19-cv-00799-TWP-DLP |
| CORRECTIONAL MEDICAL SERVICES, INC., WEXFORD HEALTH SOURCES, INC., FRANCES E. DWYER, and NAVEEN RAJOLI, | ) ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on the parties' cross Motions for Summary Judgment. Plaintiff Donald Weaver, Jr. ("Mr. Weaver"), filed this civil action alleging that he was denied constitutionally adequate medical care while incarcerated at Wabash Valley Correctional Facility ("WVCF") between November 22, 2013, until he was transferred to another facility on March 1, 2017. (Dkt. 2.) Correctional Medical Services, ("Corizon"), and Wexford Health Sources, ("Wexford"), each filed a Motion for Summary Judgment, (Dkt. 64, Dkt. 72). Thereafter, Mr. Weaver filed a cross Motion for Summary Judgment, (Dkt. 80). For the reasons explained below, the Defendants' Motions for Summary Judgment are **granted**, and the Mr. Weaver's Motion for Summary Judgment is **denied.**

**I. STANDARD OF REVIEW**

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or

genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Federal Rule of Civil Procedure 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative. *Montgomery v. Am. Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment

because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trs. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). Cross-motions for summary judgment are treated separately. *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008). When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metrop. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## II. PROCEDURAL BACKGROUND

Mr. Weaver initiated this action on February 22, 2019, (Dkt. 2), and on May 15, 2019, the Court severed claims from this action that were misjoined.[1] (Dkt. 10.) In his Complaint, Mr. Weaver alleged that Defendants Frances E. Dwyer ("Dr. Dwyer"), Naveen Rajoli ("Dr. Rajoli"), and Dr. John M. Nwannunu ("Dr. Nwannunu) were aware that he was experiencing pain in his throat, mouth, and chest, but denied him medical care while he was at WVCF. (Dkt. 12 at 3.) He

---

[1] Mr. Weaver was transferred to Pendleton Correctional Facility on March 1, 2017, and his claims related to the denial and/or delay of medical care after his transfer there are pending in *Weaver v. Zatecky et al*, Case No. 1:19-cv-01950-SEB-DLP.

alleges that Corizon and Wexford have a custom or practice of failing to properly diagnose and treat serious medical needs of prisoners and of failing to train physicians to diagnose and treat pain and serious medical needs, and that these entities breached their contract to provide him, a third-party beneficiary, medical care. *Id.* The Court screened Mr. Weaver's Complaint on June 7, 2019, and determined the following claims would proceed: (1) the deliberate indifference claims under the Eighth Amendment against Defendants Drs. Dwyer, Rajoli and Nwannunu; (2) the policy or practice Eighth Amendment claims against Corizon and Wexford; and (3) the breach of contract (third-party beneficiary) claims against Corizon and Wexford. *Id.* at 4. However, on November 8, 2019, the Court entered an Order Dismissing all Claims against Defendant Nwannunu for lack of service. (Dkt. 47).

On March 6, 2020, Corizon and Drs. Dwyer and Rajoli filed their Motion for Summary Judgment. (*See* Dkt. 64.) Mr. Weaver filed his Motion for Summary Judgment pertaining to these Defendants[2] on June 26, 2020, contemporaneously with his response to the Defendants' dispositive motion. (Dkts. 80-83.) The Defendants filed their response to Mr. Weaver's dispositive motion and their reply in support of their motion for summary judgment on July 8, 2020. (Dkt. 85.) On March 30, 2020, Wexford filed its Motion for Summary Judgment. (Dkt. 72.) Mr. Weaver filed his response in opposition to Wexford's motion on June 26, 2020. (Dkt. 84.) Wexford replied on July 9, 2020. (Dkt. 86.) The Motions are now ripe for ruling.

### III. FACTUAL BACKGROUND

**A.    The Parties**

Mr. Weaver is an Indiana Department of Correction ("IDOC") inmate and at all times relevant to his claims in this action, was housed at WVCF. On March 1, 2017, he was transferred

---

[2] Mr. Weaver's Motion for Summary Judgment at Docket 80 does not pertain to Wexford.

4

to Pendleton Correctional Facility ("PCF"). (Dkt. 65-3 at 3.) Corizon was under contract with the IDOC to provide medical care to IDOC inmates through March 31, 2017. Wexford did not become the provider of medical care to IDOC inmates until April 1, 2017. (Dkt. 74-2.)

Dr. Dwyer is a physician licensed to practice in the State of Indiana and worked as a *locum tenens* physician at WVCF from November 2013 to April 2014. (Dkt. 65-4 at 1.) He was employed by an independent *locum tenens* company and not by Corizon. *Id.* His position involved working as "a temporary appointment to fill shortages in staffing[.]" *Id.* Dr. Rajoli is a physician licensed to practice in the State of Indiana and is currently employed by Wexford at WVCF. (Dkt. 65-1 at 1.) He also worked as the regional medical director for Corizon. *Id.*

### B.     Mr. Weaver's Medical Interactions at WVCF

Mr. Weaver's medical issues began on November 22, 2013, when he experienced breathlessness, fainting and dizzy spells, and pain in his throat. (Dkt. 65-3 at 6.) He began to notice a coating on his tongue and swelling of his throat. *Id.* at 6-7. He asked for medical tests but never received any and was "just always told what was wrong" with him by the Defendants. *Id.* He asked to be seen by a specialist and Drs. Dwyer and Rajoli kept giving him medications for cholesterol, high blood pressure, acid reflux, an inhaler despite his lungs being clear, and antibiotic after antibiotic that did not work. *Id.* at 7-8. Though Mr. Weaver discussed the numerous attempts the doctors made, he disagreed during his deposition that he was provided treatment for his condition. *Id.* at 11.

#### 1.     Dr. Dwyer

Dr. Dwyer, along with other WVCF doctors, treated Mr. Weaver between November 2013 and April 2014. (Dkt. 65-1 at 2.) Specifically, on November 27, 2013, Dr. Dwyer saw Mr. Weaver in the Chronic Care Clinic for acid reflux and hypertension, but Mr. Weaver did not complain of

issues related to his chief complaints in this action. (Dkt. 65-2 at 4-8.) He denied any choking or swallowing difficulty. *Id.* At this visit, he had no nasal deformity, mucous membranes were normal, the tongue and throat appeared normal, and there were no mucosal lesions; he did not have an enlarged thyroid. *Id.* In December 2013, Mr. Weaver was seen by nurses for shortness of breath, he had normal chest x-rays and pulmonary function test, and Dr. Dwyer thought his symptoms may be due to anxiety. *Id.* at 9-23. Dr. Dwyer recommended a mental health consultation, and Mr. Weaver had no swollen lymph nodes, his throat was not red, and there was no drainage. *Id.* at 12. On December 19, 2013, Dr. Dwyer noted that there was no airway obstruction, no deformities, and no evidence of tongue swelling or difficulty swallowing. *Id*. at 23-26. On January 2, 2014, Dr. Dwyer prescribed an inhaler in an effort to aid the shortness of breath, and Mr. Weaver's nose, mouth, and throat were normal. *Id.* at 27-29. Dr. Dwyer indicated if Mr. Weaver was still symptomatic on his next visit with no relief from his inhaler, Zantac could be implemented. *Id.* at 29. Zantac was prescribed later to rule out acid reflux as a cause of Mr. Weaver's symptoms. *Id.* at 37.

Dr. Dwyer treated Mr. Weaver for approximately five months. His medical care for Mr. Weaver's throat condition included "physical examinations, an x-ray, pulmonary function tests, referral for mental health evaluation, an inhaler, Zantac, an antibiotic, and prednisone." (Dkt. 65-1 at 2; Dkt. 65-2 at 35-62.) He did not provide medical care to Mr. Weaver after April 2014, at which time he left his position at WVCF. (Dkt. 65-2 at 77-80; Dkt. 65-4 at 2.) On this visit, Mr. Weaver wanted a referral to a throat specialist and described white coating on his tongue, but Dr. Dwyer found no coating upon examination. (Dkt. 65-2 at 77-80.)

    **2.**    **Dr. Rajoli**

Dr. Rajoli examined Mr. Weaver on November 22, 2013, for chest pain and high blood pressure. (Dkt. 65-2 at 1-3.) At this visit, Dr. Rajoli changed the timing of the blood pressure

6

medication to provide more coverage during the day, prescribed low-dose Aspirin, and added different blood pressure medication. *Id.* Mr. Weaver did not complain about throat pain or his issues related to swallowing or choking. *Id.* On April 4, 2014, Dr. Rajoli provided his medical opinion—a consult to Dr. Dwyer regarding Mr. Weaver's condition—and advised a short course of prednisone. *Id.* at 62-64.

Dr. Rajoli examined Mr. Weaver on January 7, 2016, in the Chronic Care Clinic and reviewed his chronic health conditions including "asthma, hyperlipidemia, hypertension, and acid reflux." (Dkt. 65-1 at 2; Dkt. 65-2 at 81-85.) During this visit, Dr. Rajoli reviewed and renewed Mr. Weaver's appropriate medications and ordered routine blood work and labs. (Dkt. 65-1 at 2.) Mr. Weaver's medications included those for asthma, high blood pressure, high cholesterol, heartburn, an anti-bacterial mouthwash, and low-dose Aspirin. *Id.* Dr. Rajoli attested and the medical records support that Mr. Weaver did not complain "about choking, throat pain, difficulty swallowing, dizziness, difficult[y] walking, or shortness of breath." *Id.* Dr. Rajoli attested that if Mr. Weaver had made these complaints, he would have documented them and treated him for them. *Id*.

Dr. Rajoli saw Mr. Weaver again on February 11, 2016, regarding "non-specific episodes" of difficulty swallowing. (Dkt. 65-1 at 3; Dkt. 65-2 at 86-89.) Mr. Weaver did not report issues with eating and did not indicate weight loss. (Dkt. 65-1 at 3.) Dr. Rajoli's examination resulted in "no notable lesions on [Mr. Weaver's] tonsillar pillars or oropharynx, no palpable swelling to his neck, and a normal trachea and thyroid." *Id.* Mr. Weaver's lab work was normal, and Dr. Rajoli attested Mr. Weaver made no further complaints about difficulty swallowing. *Id.* At this time, Dr. Rajoli did not find that Mr. Weaver's symptoms, the results of his physical examinations, or his test results warranted referral to a specialist. *Id.*

Dr. Rajoli treated Mr. Weaver for the last time on April 25, 2016, in the Chronic Care Clinic, for heartburn. (Dkt. 65-1 at 3; Dkt. 65-2 at 90-94.) A physical examination was normal, and Dr. Rajoli reviewed Mr. Weaver's lab work and medications, renewed medications, counseled him to take them as prescribed, and advised him to submit healthcare request forms for additional acute problems. *Id.* At this last encounter, Mr. Weaver did not raise complaints about choking, difficulty swallowing, throat pain, or any other abnormal symptoms. *Id.*

### C.      Mr. Weaver's Medical Treatment After Transfer to PCF

While still at WVCF, Mr. Weaver saw Dr. Byrd, who began to wean him off some medications. (Dkt. 65-3 at 9.) Then, after his transfer to PCF, he was seen by an outside specialist on March 23, 2017. *Id.* The outside specialist diagnosed Mr. Weaver with ptotic epiglottis, chronic tonsilitis, and dysphasia. *Id.* The specialist recommended a surgical procedure that was completed in August 2018. Since that procedure, Mr. Weaver has had no additional medical issues. *Id.* at 14.

### III.     DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Defendants Corizon, Dr. Dwyer, and Dr. Rajoli argue that Mr. Weaver's claims are barred by the statute of limitations and that the individual Defendants were not deliberately indifferent to his serious medical needs because appropriate medical care was provided "in the form of numerous physical examinations, testing, medications, x-rays, blood work and labs for his throat pain and other ailments." (Dkt. 64 at 1.) Defendant Wexford argues that this action predates its contract to provide medical care within the IDOC. (Dkt. 72.)

### A.      Wexford Claims

Simply put, Wexford did not begin to render medical services to IDOC inmates until April 1, 2017, when it assumed the contract with the IDOC, previously held by Corizon. (Dkt. 74-2.)

8

Mr. Weaver's claims from November 2013 up through his transfer to PCF in March 2017, all predate Wexford's tenure.  Moreover, Mr. Weaver's claims regarding medical treatment he received under Wexford's tenure—after his transfer to PCF—are at issue in the subsequent action pending before this Court in Case No. 1:19-cv-01950-SEB-DLP.

Although Mr. Weaver opposed Defendant Wexford's Motion for Summary Judgment, he has not and cannot provide any evidence to refute that Wexford was not responsible for his care at this time.  Accordingly, Wexford is entitled to summary judgment as a matter of law on all claims in this action.  Thus, its Motion, Dkt. 72, is **granted**.

B.      **Breach of Contract Claim**

Mr. Weaver's claim that Corizon breached its contract with Indiana to provide adequate medical services to inmates is governed by Indiana law.  It is well settled that "[t]he parties to a contract are the ones to complain of a breach, and if they are satisfied with the disposition which has been made of it and of all claims under it, a third-party has no right to insist that it has been broken."  *Harold v. McComb & Son, Inc. v. JP Morgan Chase Bank*, 892 N.E.2d 1255, 1258 (Ind. Ct. App. 2008) (internal quotation omitted).  There is no evidence in the record that the State of Indiana is not satisfied with Corizon's contract performance.

Mr. Weaver contends that he is an intended third-party beneficiary under the Corizon contract.  The Indiana Supreme Court has explained the circumstances under which a third-party to a contract may sue to enforce the contract:

> To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose an obligation on one of the contracting parties in favor of the third party. It is not enough that performance of the contract would be of benefit to the third party. It must appear that it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed. The intent of the contracting parties to bestow rights upon a third party

9

> must affirmatively appear from the language of the instrument when properly interpreted and construed.

*Cain v. Griffin*, 849 N.E.2d 507, 514 (Ind. 2006) (internal quotation omitted).  A third-party beneficiary must show the following:

> (1) a clear intent by the actual parties to the contract to benefit the third party;
>
> (2) a duty imposed on one of the contracting parties in favor of the third party; and
>
> (3) performance of the contract terms is necessary to render the third party a direct benefit intended by the parties to the contract.

*Eckman v. Green*, 869 N.E.2d 493, 496 (Ind. Ct. App. 2007).  "The intent to benefit the third-party is the controlling factor and may be shown by specifically naming the third-party or by other evidence." *Id*.

Mr. Weaver has not attempted to make the requisite showing that he is an intended third-party beneficiary of the contract between Corizon and the State of Indiana. Without such a showing, his breach of contract claim fails.  Moreover, the Defendants point to this Court's ruling in *Harper v. Corizon Health Inc., et al.*, which found that the contract between Corizon and Indiana only mentioned inmates in the first line of the agreement which was "not an affirmative statement of any intent to bestow rights upon the inmates at IDOC.  Nor is there an affirmative statement in any part of the contract to show an intent to bestow rights on the inmates." *See* No. 2:17-cv-00228-JMS-DLP, 2018 WL 6019595 at *9-10 (S.D. Ind. Nov. 16, 2018) (there was no legal intent to benefit and confer rights on IDOC inmates in the contract, thus, plaintiff had "no legal standing to complain because he is not a third party beneficiary to the contract.").

Accordingly, Corizon is entitled to summary judgment on the breach of contract claim.

**C.**     **Statute of Limitations**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Suits under § 1983 use the statute of limitations and tolling rules that states employ for personal-injury claims. In Indiana, the applicable statute of limitations period is two years. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Ind. Code § 34-11-2-4.

Dr. Dwyer last provided medical care to Mr. Weaver on April 24, 2014, at which point he left his position at WVCF. (Dkt. 65-1 at 2.) Dr. Rajoli last provided medical care to Mr. Weaver on April 25, 2016. *Id.* at 3. Based upon the two-year statute of limitations, Mr. Weaver had until April 24, 2016 to file suit against Dr. Dwyer, and April 25, 2018 to file suit against Dr. Rajoli. Mr. Weaver did not file his Complaint until February 22, 2019, well after the statute of limitations expired. (Dkt. 2.) Mr. Weaver argues that his claims are not barred because he filed several grievances and even "got with the Ombudsman[.]" (Dkt. 83 at 3.) However, the filing of grievances leading up to a lawsuit or contacting the Ombudsman does not toll the statute of limitations.

Because Dr. Dwyer left the institution altogether in 2014, his involvement in any alleged wrong is over because the date of his departure from WVCF is the last possible date in which Mr. Weaver's claim accrued. *See, e.g., Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 517-18 (7th Cir. 2019) (even under a continuing wrong theory, when a defendant leaves the institution, his involvement is over). Accordingly, the claims against Dr. Dwyer are barred by the statute of limitations, and the Defendant is entitled to summary judgment as a matter of law.

11

To the extent that Dr. Rajoli's employment at WVCF continued beyond his final treatment of Mr. Weaver in April 2016 and thus could be construed as having continued capacity or power to do something about Mr. Weaver's condition, the Court will address the claim against him on the merits.

### D. Deliberate Indifference of Dr. Rajoli

At all times relevant to Mr. Weaver's claims, he was a convicted inmate. This means that the Eighth Amendment applies to his deliberate indifference claims. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750-51 (7th Cir. 2011).

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The "subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

Mr. Weaver does not have a constitutional right to demand specific medications or treatment. *Arnett,* 658 F.3d at 754 ("[A]n inmate is not entitled to demand specific care and is not

12

entitled to the best care possible…." Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm.").

"A medical professional is entitled to a deference in treatment decisions unless no minimally competent professional would have [recommended the same] under the circumstances." *Pyles*, 771 F.3d at 409. "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Id.* (internal citation omitted).

The Defendants do not dispute that Mr. Weaver's condition was an objectively serious medical need. (Dkt. 66.) Rather, they dispute whether the doctors were deliberately indifferent. *Id.* at 11-12. The crux of Mr. Weaver's argument is that the doctors did not adequately treat him because they did not run proper tests, did not diagnose him properly, and kept him in pain. (Dkt. 83 at 4.) He contends that because he eventually had to have a surgical procedure in 2018, this could have been avoided if he had received a proper diagnosis. *Id.*

However, Mr. Weaver is not entitled to demand specific care such as specific testing or to be seen by an outside provider, or even to receive the best care. As evidenced in the medical record, Dr. Rajoli exercised his professional judgment in assessing Mr. Weaver's medical issues. The record, as discussed above, lays out an extensive treatment history by Dr. Rajoli. Dr. Rajoli reviewed Mr. Weaver's medications, ordered lab and blood work, physically examined Mr. Weaver and found no lesions on his tonsillar pillars or oropharynx, found no swelling to his neck, and determined his trachea and thyroid were normal. The record indicates that many times during the interactions with Dr. Rajoli, Mr. Weaver did not complain of choking or difficulty swallowing, and the doctor treated him for the other symptoms he did present. Dr. Rajoli's medical opinion during the course of his treatment of Mr. Weaver was that Mr. Weaver's symptoms, physical

examinations, and test results did not warrant a referral to a specialist at that time. Simply because Mr. Weaver did see a specialist in 2017, after this course of treatment, does not establish that Dr. Rajoli was deliberately indifferent to Mr. Weaver's medical condition. "The federal courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment." *Pyles*, 771 F.3d at 409 (where prisoner wanted different treatment because his medications were not helping, his disagreement with the physician did not allow him to prevail on his Eighth Amendment claim where the physician's choice of treatment was not blatantly inappropriate). Mr. Weaver has not made such a showing.

Because no reasonable juror could find that Dr. Rajoli was deliberately indifferent to Mr. Weaver's medical needs, he is entitled to summary judgment as a matter of law.

**E.      Policy Claim Against Corizon**

Mr. Weaver testified that he is suing Corizon because the doctors were employed by Corizon, and Corizon should have properly trained them "on how to deal with medical issues and how to deal with us inmates by saying we have something wrong." (Dkt. 65-3 at 10.) Corizon is "treated the same as a municipality for liability purposes under § 1983." *See Minix v. Canarecci*, 597 F.3d 824, 832 (7th Cir. 2010) (holding that a corporation that contracted with a jail to provide health services is "treated the same as municipalities for liability purposes in a § 1983 action"). Thus, to hold a private corporation liable under § 1983, a plaintiff must establish that the alleged "constitutional violation was caused by an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). If a plaintiff provides "no

evidence of an unconstitutional policy or custom of [Corizon] itself, [] precedents doom his claim against the corporation." *Id.*

As discussed above, Mr. Weaver did not suffer any constitutional violation with respect to his medical treatment, thus, Corizon cannot be held liable for maintaining an unconstitutional policy or practice. *Shields*, 746 F.3d at 789. Accordingly, Corizon is entitled to summary judgment as a matter of law.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Mr. Weaver also argues that he is entitled to summary judgment; but he has failed to come forward with sufficient evidence to show that his claims are not barred by the statute of limitations or to establish that the individual doctors were liable to him for violating his Eighth Amendment rights as a matter of law. Without any constitutional violation, Mr. Weaver cannot establish a policy or practice claim against Corizon. His Motion continues to argue that the doctors allowed his situation to "go untreated, unnoticed," and he suffered pain and stress because he was not receiving relief. (Dkt. 81 at 1.) But Mr. Weaver does not explain how his designation of evidence materials--which include medical information about beta-adrenergic blockers, epiglottis, and listing of medical term definitions--provide support regarding his treatment by the doctors at WVCF. (Dkt. 82-1.) Though Mr. Weaver disagrees with what was discussed with the doctors, he has not shown that the doctors did not use professional medical judgment in the course of his treatment or that their treatment departed from accepted medical standards. Instead, he merely, states disagreement with their treatment approach. Accordingly, his Motion for Summary Judgment, (Dkt. 80), must be **denied.**

## V. CONCLUSION

For the reasons explained above, Defendants Correctional Medical Services' and Wexford Health Sources' Motions for Summary Judgment, Dkt. [64] and [72], are **GRANTED** and Mr. Weaver's Motion for Summary Judgment, Dkt. [80], is **DENIED**.

Final judgment consistent with this Entry, the screening Entry of June 7, 2019, (Dkt. 12), and the Entry of November 8, 2019, dismissing Dr. Nwannunu, (Dkt. 47), shall now issue in a separate document.

**SO ORDERED.**

Date:  3/23/2021

*[Signature: Tanya Walton Pratt]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Donald E. Weaver, Jr., #935351
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Jeb Adam Crandall
BLEEKE DILLON CRANDALL ATTORNEYS
jeb@bleekedilloncrandall.com